**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

-vs-                                Case No.  2:05-cr-50-FtM-29SPC

WILLIAM EDWIN MOORE,

               Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Defendant William Edwin Moore's Motion to Suppress Post-Arrest Statements (Doc. # 66) filed on December 23, 2005, and the Defendant William Edwin Moore's Second Motion to Suppress Post-Arrest Statements (Doc. # 72) filed on January 22, 2006.

      On January 18, 2006, the Court held a hearing on the Defendant's Original Motion to Suppress. (Doc. # 66).  At that hearing, the Defendant informed his Counsel that he wished to include additional factual information in the Motion to Suppress.  Based on Defense Counsel's representation that the new information was relevant, the Court allowed the Defendant additional time to include the information and brief the new issues.  A second hearing was scheduled before the Court for January 27, 2006.

      On January 27, 2006, the second hearing took place before the Honorable Sheri Polster Chappell, United States Magistrate Judge.  At that hearing, the Court inquired of the Defendant if there were any additional issues that he had not discussed with his attorney or that were not in the

First or Second Motions to Suppress regarding his arrest and any subsequent statements that were made regarding the interviews that he wished to have addressed.  The Defendant Moore stated he had revealed everything he knew about the statements made during the interviews with the Federal Bureau of Investigations (FBI), and the Lee County Sheriff's Office (LCSO).  The Government called as its witnesses Special Agent James Ronczinski, Lieutenant Randy Crone, and Special Agent John David Kuchta.  The Defendant, William Edwin Moore, testified on his own behalf.

### TESTIMONY AND EVIDENCE

Special Agent James Ronczinski: (Tr. 13-40).

Spc. Agt. Ronczinski has been with the FBI  for six (6) years. (Tr. 14:3-7). Prior to joining the FBI, Spc. Agt. Ronczinski served with the Rochester, New York, City Police Department.  (Tr. 14:8-13). Spc. Agt. Ronczinski's duties include investigating violent crimes that have a federal nexus, such as bank robberies, armored  car robberies, kidnappings, and civil rights violations. (Tr. 14:15-19).  Spc. Agt. Ronczinski testified to the events that occurred during his interviews with the Defendant on July 6, 2000, and May 13, 2005.

Spc. Agt. Ronczinski testified that he interviewed the Defendant on July 6, 2000, at the LCSO's major crimes unit located on Six Mile Cypress Parkway, in Fort Myers. (Tr. 16:1-4).  Spc. Agt. Ronczinski stated that he had knowledge that Moore was under surveillance as a suspect in three bank robberies that occurred in 2000 and that he could be arrested on a driver license charge. (Tr. 36:8-24).  Moore was indeed arrested for driving with a suspended driver's license, booked into jail and taken to the LCSO where he was interviewed by Spc. Agt. Ronczinski. (Tr. 23:14-20).

Spc. Agt. Ronczinski testified that he read Moore his <u>Miranda</u> rights from an Advice of Rights form used by the FBI. [1] (Tr. 16:23-25, 17:1-11).

Lt. Crone from the LCSO major crimes unit was present when the Defendant's <u>Miranda</u> rights were read. (Tr. 17:19-21).   Spc. Agt. Ronczinski testified that Moore was not intoxicated, that he appeared coherent, and that he acknowledged that he understood his rights, and  signed the waiver of rights form. (Tr. 18:2-25,19:1).   No coercion was used or promises made to induce Moore to sign the waiver. (Tr. 19:2-10).   At no time did Moore request an attorney or mention an attorney's name. (Tr. 19:19-25, 20:1-6).

Spc. Agt. Ronczinski stated that he asked Moore if he would consent to a search of his home. Moore replied that he would but first he would need to call his mother. (Tr. 20:7-18).   Spc. Agt. Ronczinski informed him that he was an adult and the decision was his.  (Tr. 20:13-18).   Spc. Agt. Ronczinski stopped that part of the interview, spoke with other detectives who were present and it was  determined that they would seek a  search warrant for the house. (Tr. 21:6-18).   At that point it was understood by Spc. Agt. Ronczinski that Moore would be taken to jail.  Spc. Agt. Ronczinski testified that he never chided or made fun of Moore after he said he wanted to call his mother. (Tr. 20:21-25).

---

[1] The form reads in pertinent part:
> Before we ask you any questions you must understand your rights.
> You have the right to remain silent.
> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions.
> You have the right to have a lawyer with you during questioning.
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
> If you decided to answer questions now without a lawyer present, you have the right to stop answering at any time. (Government's Exhibit 1).

Moore did state that he was not the William Moore that had been arrested for a previous bank robbery and he related the story about his father being wrongfully convicted of murder. (Tr. 22:14-20). However, at no time did Moore request an attorney, mention an attorney's name, or state that his mother would have the phone number for an attorney. (Tr. 21:22-25, 22:1-8). The Defendant never stated that his mother had the phone number to contact defense attorney Steve Homes. (Tr. 21:22-25). The Defendant made no further statements about the 2000 bank robberies. (Tr. 22:9-14). After the consent to search discussion, the 2000 interview ended. (Tr. 22:14-25, 23:1-5).

Spc. Agt. Ronczinski also interviewed Moore on May 13, 2005. (Tr. 24:4-11). He was accompanied by Spc. Agt. John Kuchta. (Tr. 24;23-25). Spc. Agt. Ronczinski informed Moore that he had been indicted on charges of bank robbery and a fire arms charge by a federal grand jury. (Tr. 25:3-6). Once again, prior to the interview beginning, Moore was read his <u>Miranda</u> rights from the FBI's Advice of Rights form. (Tr. 25:7-24). Moore read the Advice of Rights form and handed it back without signing it. (Tr. 27:1-11). According to Spc. Agt. Ronczinski, Moore appeared coherent and to understand his rights. (Tr. 25:10-21). Spc. Agt. Ronczinski testified that Moore's failure to sign the consent form did not indicate that he was invoking his Miranda rights. (Tr. 28:3-6).

Moore never stated that he did not want to speak, and he never asked for an attorney.(Tr. 26:18-20). Spc. Agt. Ronczinski then began asking the Defendant about the 2000 and 2005 robberies. (Tr. 27:13-14). At the end of the discussion, Moore stated that he would rather be taken to jail than to answer any more questions, therefore, the interview ended. (Tr. 27:19-23). Spc. Agt. Ronczinski filled out a FBI Form 302, which is used by the FBI to record notes and statements made during an interview. (Tr. 28:7-22).

<u>Lieutenant Randy Crone</u>: (Tr. 74-84).

Lt. Crone has served with the LCSO for twenty (20) years and is currently a supervisor in the LCSO Major Crimes Unit. (Tr. 74:17-25, 75:1-25).   Lt. Crone was present on July 6, 2000, when Moore was first interviewed by the FBI. (Tr. 75:7-12).   Lt. Crone witnessed Spc. Agt Ronczinski read Moore his <u>Miranda</u> rights and testified that Moore appeared to understand his rights, that he signed the waiver form, and that Moore never invoked the right to have an attorney present during the interview. (Tr. 76:5-25, 77:1-25, 77:).   They asked Moore for consent to search his residence. (Tr. 78:8-11).   Moore stated that he wanted to call his mother first. (Tr. 78:21-25).   Moore was told that he had to make the decision, not his mother. (Tr. 79:1-4).   According to Lt. Crone, Moore never requested an attorney and Moore never mentioned that his mother would call attorney Steve Holmes. (Tr. 79:5-12).   At that point, Spc. Agt. Ronczinski and Lt. Crone left the interview room and decided to get a search warrant for Moore's home rather than follow up with Moore's request to call his mother. (Tr. 79:13-18).   Lt. Crone did not return to the interview room.

<u>Special Agent John Kuchta</u>: (Tr. 84-92).

Spc. Agt. Kuchta has served with the FBI for fourteen (14) years. (Tr. 8422-25, 85:1 ).   He was present with Spc. Agt. Ronczinski during the May 13, 2005, interview of the Defendant Moore. (Tr. 85:12-15).   Spc. Agt. Kuchta testified that Spc. Agt. Ronczinski read Moore his <u>Miranda</u> rights from the Advice of Rights form and handed it to Moore to read. (Tr. 86:1-2).   Moore passed the form back to Spc. Agt. Ronczinski without signing it. (Tr. 86:2-18).

Spc. Agt. Ronczinski then proceeded to go over the charges against Moore and laid out the Government's evidence. (Tr. 85:17-22).   Included in the evidence against Moore was a photograph allegedly of Moore leaving the scene of one of the bank robberies. (Tr. 85: ). Spc. Agt. Ronczinski

told Moore that the photograph had been shown to his girlfriend, Faith Thomas, who identified the suspected robber in the photograph as Moore. (Tr. 88:21-25, 89:1-22). No statements were made to Moore that Thomas had discovered that day that she was pregnant. (Tr. 88:16-19, 89:6-16).

Spc. Agt. Kuchta stated that Moore appeared to understand his Miranda rights and never asked to have an attorney present. (Tr. 88:7-20). Spc. Agt. Kuchta testified that at no time during the interview did Moore invoke his right to counsel or state he wanted to remain silent. (Tr. 88:7-20). At the end of the interview, Moore asked to be taken back to jail. (Tr. 87:19-24).

Defendant William Edwin Moore: (Tr. 41-73).

On July 6, 2000 the Defendant Moore was arrested by LCSO for driving on a suspended license, retained in custody, and taken to Six Mile Cypress LSCO to be interviewed. (Tr. 41:25, 42:1-10). Moore states that he was not booked on the driver's license charge until after the interview occurred. (Tr. 42:14-25). After being taken into custody, Moore was interviewed by Spc. Agt. Ronczinski and at that time he signed a waiver of Miranda rights form. (Tr. 43:5-9). According to Moore, the interview lasted for around seven (7) hours. (Tr. 46:11-13).   The interview began with Spc. Agt. Ronczinski asking Moore for consent to search his residence. (Tr. 43:5-13). Moore told Spc. Agt. Ronczinski that he would consent to the search if he could call his mother first. (Tr. 44:3-14). Moore states that Spc. Agt. Ronczinski chided him and told him that he did not need to call his "mommy." (Tr. 44:6-8). Moore states that he then related the story of how his father had been wrongfully convicted of murder, and that he would feel better having his mother and his sister's boyfriend, who is an attorney, present during the search. (Tr. 44:6-17). Moore recalls that he was left alone in the interview room for a while and then placed in a holding cell. (Tr. 44:24-25, 45:1-13). When they resumed, he asked to be allowed to "make his phone call" but was informed that he did

not have the right to make a phone call. (Tr. 45:20-25).  Instead they informed him that they were going to get a search warrant and that he would not be allowed to make a phone call. (Tr. 46:1-5). They then questioned him about items found during the search of his residence such as certain receipts and a pair of children's sunglasses. (Tr. 46:16-22).

Moore stated that he could not remember everything he was questioned about but does recall questions regarding the receipts, continuing a discussion about articles found in a truck, Richard Sahs, and how he, Moore, made his money.  (Tr. 56:16-25, 57:1-24).  Moore admitted to borrowing Richard Sahs handgun on a couple of occasions but can't remember whether or not he had already invoked his right to an attorney prior to making those statements. (Tr. 57:6-24).  However, Moore did state that he never specifically told Spc. Agt. Ronczinski that he wanted an attorney present prior to making any statements. (Tr. 58:1-6).

Moore was again interviewed by Spc. Agt. Ronczinski on May 13, 2005. (Tr. 47:3-7).  At that interview he was presented with a Waiver of Rights form but he refused to sign it stating that he did not want to waive his rights. (Tr. 47:12-16).  He said that Spc. Agt. Ronczinski told him he was really not  waiving his rights that was just not a good way to refer to the form because he still maintained his rights. (Tr. 47:18-21). He testified that he understood his rights then and back in 2000 as much as he could at that time. (Tr. 64:4-10).  Moore  asked if he could bond out and was told no because he was being held on bank robbery charges and a judge would not let him out on those charges. (Tr. 62:15-25).

Moore says that Spc. Agt Ronczinski then proceeded to ask him "rhetorical questions" about the robberies and spoke about his girlfriend Faith Thomas. (Tr. 48:4-5, 65:17-25).  Spc. Agt Ronczinski informed him for the first time that his girlfriend was pregnant. (Tr. 48:7-12).  Spc. Agt

Ronczinski further upset Moore by recounting for him the incident where he showed her pictures of him committing one of the alleged bank robberies. (Tr. 67:11-18).  Moore said that he became angry because Spc. Agt Ronczinski had upset and scared Thomas. (Tr. 67:19-25).

Moore stated that Spc. Agt Ronczinski brought up the fact that he had an alibi. (Tr. 66:3-19). Spc. Agt Ronczinski stated he knew about Mary Lou and that story would not fly. (Tr. 66:19-21). Spc. Agt Ronczinski also covered other items with Moore such as his making  payments on a diamond ring with $100.00 bills, items that were burned on Richard Sahs grill, and statements from Amanda Whidden and Charles Daniels that Daniels had arranged for Moore to have sex with a girl in some photos presented during the interview. (Tr. 69:24-25, 70:1-19, 72:19-25, 73:1-4).  At that point, Moore said that he requested to be taken to jail. (Tr. 49:18-25, 73:5-8).

## DISCUSSION

Miranda v. Arizona, requires that before a defendant in custody can be interrogated that the Defendant be informed of: (1) the Defendant's right to remain silent; (2) that statements can and will be used against them in a court of law; (3) that the Defendant has the right to an attorney during questioning; and (4) that if the Defendant cannot afford an attorney one will be appointed.,  384 U.S. 436, 478-479 (1966).  Under Miranda, custody is the depravation of freedom of action normally associated with an arrest. Id. at 444.  There is no dispute that Moore was in custody during the interviews that took place on July 6, 2000, and May 13, 2005.  Since separate issues arise from the two interviews conducted with Moore and Spc. Agt. Ronczinski, the Court will address the interviews separately.

*July 6, 2000, Interview*

Moore claims that when he was asked about the consent to search his residence that he asked to speak to his mother and have her call Steve Holmes, his sister's boyfriend, who is a criminal defense attorney. (Tr. 44:3-14). Moore argues that he invoked his Sixth Amendment right to counsel at that moment. The Government argues that Moore never mentioned that his mother would call Attorney Holmes or any other attorney during the entire 2000 interview. (Tr. 21:22-25, 22:1-8). Because the testimony of the Government's witnesses conflicts with that of the Defendant Moore, the Court must first perform a credibility analysis on the conflicting testimony before proceeding.

When weighing the credibility of witnesses, the Court does not look at the status of the witnesses, but rather the Court must weigh the testimony of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand and the witnesses' interest in the outcome of the hearing. U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (11th Cir. 2002). The testimony of Spc. Agt. Ronczinski and Lt. Crone agree in all aspects that Moore never requested an attorney and Moore never mentioned that his mother would call attorney Steve Holmes. Even Moore agrees that he signed the waiver of rights form and acknowledged that he understood those rights as listed on the form during the 2000 interview. (Tr. 61:10-19, 64:6-8).

Spc. Agt. Ronczinski took notes and filled out an FBI 302 form which is used by FBI agents to record notes and statements made during an interview with a suspect. Those notes do not mention any request by Moore for an attorney. (Court's Exhibit 1). On cross examination, Moore said he did not take notes during the interview nor make a recording of the interview, but he did state that he wrote down notes after the interview concluded. (Tr. 50:17-21). However, Moore stated that he lost those notes in a box somewhere due to making several moves or during one of the recent hurricanes.

(Tr. 50:22-25, 51:1-4).   When asked what was discussed after he allegedly invoked his right to an attorney he stated that they talked about the receipts and Richard Sahs. (Tr. 69:24-25, 70:1-19, 72:19-25, 73:1-4).   However, he said he could not be clear on the specific time he asked for an attorney except to say it was when he gave consent to search his residence (Tr. 56:13-25-59:1-23).

Further, Moore's demeanor on the stand changed when challenged about his statements that he requested an attorney or that he requested his mother to call an attorney for him.  He became agitated and his statements became unsure.  Furthermore, if Moore is convicted of the bank robbery charges, Moore could face substantial prison time.

Thus, based upon the consistency of the testimony of the Government's witnesses, their exhibits noting what was said at the interview,  and Moore's lack of specific recall when he claims he actually invoked his right to an attorney, his "lost notes," and his demeanor on the witness stand, the Court finds the testimony of Spc. Agt. Ronczinski and Lt. Crone to be the more credible.

Having found the testimony of Spc. Agt. Ronczinski and Lt. Crone to be the more credible, the Court will now address Moore's argument that he was denied his right to counsel.  A defendant's Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. U.S., 2004 WL 111410 (January 26, 2004) (citing Brewer v. Williams, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)).

After being arrested on July 6, 2000, for driving with a suspended license, Moore met with Spc. Agt. Ronczinski at the Six Mile Cypress LCSO.  At his interview with Spc. Agt. Ronczziski, Moore knowingly and intelligently waived his right to counsel by signing the waiver of rights form. (Government Exhibit # 1). "The constitutional minimum for determining whether or not a wavier was

'knowingly and intelligently' is that the accused be made sufficiently aware of his right to counsel."

<u>Patterson v. Illinois</u>, 487 U.S. 285, 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988).

At his interview with Moore, Spc. Agt. Roncziski read Moore a Waiver of Rights form, and Moore willingly signed the form. (Tr. 16:23-25, 17:1-11, 43:5-9, Government's Exhibit 1).  The reading of the waiver form and the subsequent signing by Moore was witnessed by Lt. Crone. (Tr. 76:5-25, 77:1-25).  Moore testified that he understood those rights as best he could at the time he signed the waiver in 2000. (Tr. 64:4-10).  Spc. Agt. Ronczinski stated that Moore was not intoxicated, was coherent, that no coercion was used to induce the signing, and that Moore appeared to understand his Miranda rights when he signed the Waiver of Rights form. (Tr. 18:2-25,19:1-10).  Thus, it is apparent to the Court that Moore knowingly and intelligently waived his right to counsel during the July 6, 2000, interview.  Furthermore, the testimony presented at the hearing does not support the argument that he revoked the waiver by asking to speak to his mother to get a lawyer to attend the search of his residence.

"Once an accused knowingly and intelligently elects to proceed without counsel, the uncounseled statements he then makes need not be excluded at trial." <u>Patterson </u>487 U.S. at 285 (internal quotes omitted). Consequently, the Court finds that Moore's interview with Spc. Agt. Ronczinski on July 6, 2000, and the statements made at that interview did not violate Moore's Sixth Amendment right to counsel.  As a result of the Court's findings, the Court respectfully recommends that the Defendant Moore's Motion to Suppress statements made during the 2000 interview should be denied.

*May 13, 2005, Interview*

While the 2005 bank robbery charges were still in State Court, the Defendant was appointed counsel by the State Court.  The Government acknowledges that all comments made during the May 13, 2005, interview between agents of the FBI and Moore regarding the 2005 robberies should be suppressed because Moore's appointed counsel was not present for the interview.  The Defendant agrees that comments made during the 2005 interview regarding the 2000 bank robberies were not covered by that appointed counsel.  Therefore, any statements made by the Defendant Moore during the 2005 interview relating to the 2000 robberies are admissible in court.  The parties further agreed that any comments made during the 2005 interview regarding the 2005 robberies may be used for impeachment purposes only should the Defendant choose to take the stand in his criminal trial.

At the hearing, Counsel for the Government and Counsel for the Defendant highlighted the comments that applied to the 2005 robberies that should be suppressed.  The Court notes that the Defendant Moore only agreed that the statements made during the 2005 interview regarding the 2000 robberies were not covered by the Plaintiff's Sixth Amendment right to counsel.  He freely admits that he never invoked that right regarding the 2000 robberies during the 2005 interview.  However, the Defendant does not agree that those statements were made or in the alternative if they were made that they are true.  Moore merely agrees for the purposes of this Motion to Suppress that his right to counsel was not invoked during the May 13, 2005, interview.

Accordingly it is now

**RECOMMENDED:**

(1) The Defendant William Edwin Moore's Motion to Suppress Post-Arrest Statements (Doc. # 66) should be **GRANTED in part and DENIED in part**.

(a) The Defendant William Edwin Moore's Motion to Suppress Post-Arrest Statements Made During the July 6, 2000, Interview Should be **DENIED**.

(b) The Defendant William Edwin Moore's Motion to Suppress Post-Arrest Statements Made During the May 13, 2005, Interview Should be **GRANTED** as to the Statements Made Regarding the 2005 Bank Robbery Charges.

(A) Statements That **Should be Suppressed** are Taken Verbatim from the FBI Form FD-302, a Memorandum of the Interview as Follows:

¶ 4 MOORE advised that he had an alibi for one of the recent bank robberies because he was at MARY LOU'S COUNTRY WESTERN WEAR on Bayshore Road when the robbery was committed. MOORE advised he had a receipt for MARY LOU'S reflecting when he was inside MARY LOU'S. SA RONCINSKE advised MOORE that SA RONCINSKE had gone to MARY LOU'S and had spoken with MARY LOU JOHN and her daughter, MANDY BRADLEY. SA RONCINSKE explained to MOORE that the customer who made the purchase just before him and a customer who made a purchase just after him have used credit cards which reflected the exact time the purchases were made so it is known exactly when MOORE made the purchase at MARY LOU'S. SA RONCINSKE told MOORE that MARY LOU recalled police cars driving by her store with lights and siren on and asking MOORE if the police were after him. MOORE stated that MARY LOU was only joking around and that he has known MARY LOU for a while. SA RONCINSKE informed MOORE that MARY LOU advised that one of the reasons that she made the comment was because she believed MOORE was acting nervous and jittery.

¶ 5 SA RONCINSKE advised MOORE that SA RONCINSKE was aware that he went to the EDISON MALL and attempted to obtain a receipt from a jewelry store reflecting the purchase of diamonds. SA RONCINSKE informed MOORE that SA RONCINSKE knew that MOORE had made a final payment for a diamond ring at KING PAWN TRADE DEPOT in North Fort Myers, Florida shortly after the robbery of the FIRST NATIONAL BANK OF FLORIDA on February I, 2005. SA RONCINSKE informed MOORE that the pawn shop manager remembered that MOORE paid with one hundred dollar bills. MOORE stated that he had originally obtained the diamond ring at the jewelry store in the EDISON MALL and that the pawn shop put a different setting in the ring.

¶ 6 MOORE denied having a current drug problem. SA RONCINSKE

-13-

played a recording of a conversation between MOORE and his father, WALTER MOORE when MOORE called WALTER from the LEE COUNTY JAIL.

¶ 9 MOORE was shown still photographs from the WACHOVIA BANK robbery which occurred on January 28,2005, and the FIRST NATIONAL BANK OF FLORIDA on February I , 2005. MOORE viewed the photographs. SA RONCINSKE told MOORE that MOORE'S girlfriend. FAITH THOMAS, saw these photographs and advised that there was no doubt in her mind that MOORE was the person depicted in the photographs. MOORE stated that it was not right that we spoke with THOMAS because it probably upset her. SA RONCINSKE advised that THOMAS got emotionally upset when she looked at the photographs and recognized that MOORE was the person depicted in the photographs. SA KUCHTA told MOORE that THOMAS said she had seen MOORE wearing the DALE EARNHARDT #3 baseball cap that was depicted in the February I, 2005, bank surveillance photographs. MOORE advised that he did own NASCAR clothing, but had never owned that particular baseball cap.

¶ 10 MOORE was shown LCSO booking photographs of CHARLES F. DANIELS and AMANDA WHIDDEN. MOORE advised that DANIELS was the guy who had stayed next door to him at the MOTEL 6. MOORE advised that was the guy who had been using drugs. MOORE stated that this guy had arranged for MOORE to have sex with the girl depicted in the photograph. MOORE stated that he never did have sex with that girl.

¶ 11 MOORE stated that would rather be taken to jail then continue speaking with Agents. MOORE never requested the presence of an attorney during this interview. The interview was terminated and MOORE was escorted to the LEE COUNTY JAIL.

(B) Statements Made During the May 13, 2005, Interview that **Should Not be Suppressed**

are as Follows:

¶ 1 WILLIAM EDWIN MOORE, white male, born May 6: 1971, 17625 South Tamiami Trail, Fort Myers, Florida was brought to the FEDERAL BUREAU OF INVESTIGATION (FBI) Office in Fort Myers. Florida by a LEE COUNTY SHERIFF'S OFFICE (LCSO) deputy. Special Agent (SA) RONCINSKE and SA KUCHTA met with MOORE in the conference room of the FBI Office. Prior to being interviewed, MOORE was given a glass of water and offered some food. MOORE was advised that he had been indicted by a Federal

Grand Jury (FGJ) for six counts of Bank Robbery and one count of using and carrying a firearm during a crime of violence. MOORE was shown a copy of the UNITED STATES DISTRICT COURT (USDC) warrant for his arrest. Prior to the commencement of the interview, MOORE was advised of his constitutional rights as outlined in an FBI Advice of Rights form. SA RONCINSKE read the form aloud to MOORE. MOORE indicated that he understood his rights. MOORE looked at the Advice of Rights form and stated that this was the form that SA RONCINSKE had just read aloud. MOORE was asked to sign the Advice of Rights form. MOORE would not sign the form.

¶ 2 MOORE asked if there was any way he would be able to get a bond tonight. MOORE was told that this would not be possible. MOORE was told that a United States Magistrate Judge would be notified of his arrest and that most likely he would have an initial appearance in USDC on Monday, May 16, 2005. MOORE stated that he was already out on bond for robbery charges that were filed by the State of Florida. MOORE was informed that the State of Florida would be dismissing the state charges and the Federal Government would be proceeding with the bank robbery cases he was accused of in 2005. MOORE was also informed that the Federal Government would be proceeding against him with Federal bank robbery charges from the bank robbery cases from 2000.

¶ 3 MOORE stated that he did not even own a gun. SA RONCINSKE informed MOORE that the firearms charge stemmed from July 3, 2000, robbery at the SOUTHTRUST BANK in North Fort Myers. MOORE was reminded that he had borrowed RICHARD SAHS' handgun and returned it to SAHS shortly after the robbery.

¶ 7 SA RONCINSKE reminded MOORE that he was having extreme financial difficulties in May of 2000 and was possibly going to be evicted from his apartment and have his truck repossessed. SA RONCINSKE reminded MOORE that he had agreed to pay his landlord rent money by June 7, 2000. SA RONCINSKE pointed out the first bank robbery was on June 6, 2000 and that shortly after that bank robbery, MOORE went into the MONEY CORNER STORE at the corner of US41 and Colonial Boulevard in Fort Myers and sent a $900.00 wire transfer to the holder of MOORE'S truck loan. SA RONCINSKE reminded MOORE that MOORE signed RICHARD SAHS' name to the wire transfer. MOORE stated that he already explained why he signed SAHS' name the last time he was interviewed.

¶ 8 SA RONCINSKE pointed out to MOORE that the SOUTHTRUST BANK branch located at 14487 North Cleveland Avenue, North Fort Myers was robbed on July 3, 2000, at approximately 3:41 PM.. SA pointed out that shortly after

-15-

this bank robbery, RICHARD SAHS and SAHS' friend observed MOORE burning items in a grill and that MOORE gave SAHS $200.00 in cash, along with SAHS' .22 caliber revolver. SA RONCINSKE told MOORE that a LCSO detective went out to the grill and found a burned pair of eyeglass frames. MOORE stated that RICHARD SAHS also burned items in that grill. SA RONCINSKE pointed to MOORE that shortly after that, MOORE went into the MONEY CORNER STORE atUS41 and Colonial Boulevard and obtained a $500.00 money order. SA RONCINSKE pointed out to MOORE that when the LCSO executed a search warrant at his former residence on McGregor Boulevard in 2000, they found a number of receipts indicating purchases after the bank robberies in 2000. MOORE advised that it was our job to make him look guilty.

(c) It is Respectfully Recommended that the District Court **RESERVE RULING** on the

Following Statements Excerpted from the Document to Determine if the Prejudice Substantially

Outweighs  the Probative Value of the  Statement:

¶ 6 MOORE stated that he used to have a drug problem.

¶ 8   Moore advised that it was out job to make him look guilty.  It was explained to MOORE that it was a job of the FBI to investigate these bank robberies and look at the facts and not to make someone appear guilty.

(2) the Defendant William Edwin Moore's Second Motion to Suppress Post-Arrest

Statements (Doc. # 72) Should be **DENIED.**

**Failure to file written objections to the proposed findings and recommendations**

**contained in this report within ten (10) days from the date of its filing shall bar an aggrieved**

**party from attacking the factual findings on appeal.**

**Respectfully recommended** at Fort Myers, Florida, this   6th   day of February, 2006.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-16-