UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                      Case No. 2:05-cr-50-FTM-29SPC

WILLIAM EDWIN MOORE
_____

**OPINION AND ORDER**

This case is before the Court on defendant William Edwin Moore's (defendant or Moore) Motion to Suppress Post-Arrest Statements (Doc. #66) and Second Motion to Suppress Post-Arrest Statements (Doc. #72).  An evidentiary hearing was conducted by Magistrate Judge Sheri Polster Chappell, and on February 6, 2006, Judge Chappell submitted a Report and Recommendation (Doc. #84) recommending that the Motion to Suppress Post-Arrest Statements (Doc. #66) be granted in part and denied in part and the Second Motion to Suppress Post-Arrest Statements (Doc. #72) be denied.  Defendant filed Objections to Report and Recommendation (Doc. #90) on February 11, 2006.

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b()1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection

is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

The Court has read the motions, the transcript of the suppression hearing, the objections, and the legal memoranda submitted by the parties. After conducting a careful and complete review of the findings, conclusions and recommendations, and giving *de novo* review to the legal conclusions and matters to which objections were filed, the Court accepts the factual findings, credibility determinations, and recommendations of the magistrate judge, and the legal conclusions to the extent supplemented below.

Defendant's challenge to the July 6, 2000, custodial interview was not based upon the invocation of his Sixth Amendment right to counsel. There is no record evidence that the Sixth Amendment right to counsel attached at the time of this interview. The Sixth Amendment right to counsel does not attach until prosecution is commenced "by way of formal charge, preliminary hearing, indictment, information, or arraignment." United States v. Gouveia, 467 U.S. 180, 188 (1984); Peoples v. Campbell, 377 F.3d 1208, 1223 n.30 (11th Cir. 2004). Since defendant's arrest for driving with a suspended license had not yet resulted in the

2

initiation of adversary criminal proceedings, his Sixth Amendment right to counsel had not attached. Defendant, therefore could not have invoked his Sixth Amendment right to counsel as to the traffic offense. Additionally, the Sixth Amendment right to counsel is offense-specific. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991); United States v. Gonzalez-Lauzan, __ F.3d __, 2006 WL 212224, *12 (11th Cir. Jan. 30, 2006). Even if the Sixth Amendment right to counsel had attached to the traffic offense, it did not attach to the uncharged bank robbery offense, and statements about the bank robbery would nonetheless be admissible. McNeil, 501 U.S. at 175; Texas v. Cobb, 532 U.S. 162, 167-68 (2001).

Rather, defendant argues that he asserted his Fifth Amendment right to counsel as described in Miranda v. Arizona, 384 U.S. 436 (1966) and Edwards v. Arizona, 451 U.S. 477 (1982). (Doc. #72, p. 2). This right to counsel is not offense-specific, so if a suspect invokes the Miranda right to counsel for interrogation concerning one offense, he may not be interrogated regarding any offense unless counsel is present. McNeil, 501 U.S. at 177. To invoke this Fifth Amendment-based right to counsel requires a suspect to make an unambiguous request for counsel, which "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459 (1994). "If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Id. at 459. Therefore,

3

"after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." Id. at 461.

In this case the magistrate judge correctly resolved the credibility issue in favor of the officers, and correctly found that defendant knowingly and intelligently waived his right to counsel during the July 6, 2000 interview. The Court further finds that defendant did not thereafter clearly request an attorney. Special Agent James Ronczinski testified that when he asked Moore for consent to search his home, Moore said he would consent but first would need to call his mother. Special Agent Ronczinski told defendant he was an adult, and the decision was his, but stopped the interview while he conferred with other officers about getting a search warrant. Moore did not request an attorney, mention an attorney's name, state that his mother would have the phone number for an attorney, or state that his mother had the phone number to contact defense attorney Steve Holmes. It is clear that defendant's stated desire to call his mother was not an invocation of his right to an attorney. Davis, 512 U.S. at 462 ("Maybe I should talk to a lawyer" was not an unequivocal request for counsel); Mincey v. Head, 206 F.3d 1106, 1132 (11th Cir. 2000), cert. denied, 532 U.S. 926 (2001)("go ahead and run the lawyers" did not constitute an unequivocal request for counsel); Coleman v. Singletary, 30 F.3d 1420, 1422-23 (11th Cir. 1994)("I don't know. But if [the lawyer] said to stop it I don't want to do what he said not to do" not an unequivocal assert of right to remain silent);

4

<u>United States v. Mendoza-Cecelia</u>, 963 F.2d 1467, 1472 (11th Cir. 1992)("I don't know if I need a lawyer, maybe I should have one, but I don't know if it would do me any good at this point" not an unequivocal request for counsel). Indeed, even if defendant's version of the conversation about his mother is credited in its entirety, it would still not constitute an unequivocal invocation of his right to counsel. Therefore, the motion to suppress the July 6, 2000, statement as to the bank robbery will be denied.

As to the May 13, 2005, interview, the Report and Recommendation notes that the parties have agreed that those statements concerning the 2005 bank robbery were obtained in violation of defendant's Sixth Amendment right to counsel, but that the statements concerning the 2000 bank robbery did not violate defendant's Sixth Amendment right to counsel. The Report and Recommendation details which portions of the statements are admissible under this agreement and which are not admissible. The Court adopts these findings, recommendations and conclusions.

The Report and Recommendation further recommends that the Court reserve ruling on two statements until trial, at which time a Fed. R. Evid. 403 prejudice/probative value analysis can be done. (Doc. #84, p. 16). Neither statement is subject to suppression, which is the only issue currently before the Court. Accordingly, the motions will be denied as to these two statements. Defendant may raise a Rule 403 objection at trial.

Finally, the Report and Recommendation states that defendant agreed that he never invoked his Sixth Amendment right to counsel

regarding the 2000 robberies during the 2005 interview. (Doc. #84, p. 12). While defendant did not claim that he invoked a Sixth Amendment right to counsel as to the 2000 robberies during the 2005 interview, he did assert that he invoked a Fifth Amendment right to counsel. Defendant claims that his refusal to sign the written <u>Miranda</u> waiver form constituted an unequivocal invocation of his <u>Miranda</u> rights. (Doc. #66, p. 3). At the suppression hearing defense counsel continued to assert that the failure to sign a waiver constituted an invocation of defendant's rights. (Doc. #85, pp. 9, 93).

Special Agent Roncinske testified that defendant had been informed of the charges in the pending federal indictment, that he read defendant of his <u>Miranda</u> rights from a form, that no threats or promises were made, that defendant appeared coherent and not under the influence of alcohol or controlled substances, and that defendant appeared to understand the rights. (Doc. #85, pp. 25-26). Special Agent Roncinske handed the <u>Miranda</u> form to defendant, who appeared to read the form but did not sign it. Special Agent Roncinske asked defendant to sign the form, but defendant handed the form back to the agent without saying anything. Defendant did not say he did not want to answer questions or that he wanted an attorney, but began answering questions about the robberies. (<u>Id.</u> at 26-27).

It is clear that "an arrestee's refusal to sign a waiver of rights form is not enough to constitute an invocation of rights." <u>United States v. Acosta</u>, 363 F.3d 1141, 1152 (11th Cir.

6

2004)(collecting cases). Therefore, to the extent defendant argues to the contrary, he is incorrect as a matter of law. Going beyond (but considering) the mere refusal to sign the written form, the Court finds that defendant did not unequivocally and unambiguously invoke his Miranda rights to counsel or to remain silent. No objectively reasonable officer would have understood defendant's refusal to sign the form but answering questions to have been an invocation of his rights.[1]

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Magistrate Judge's Report and Recommendation (Doc. #84) is **accepted and adopted**, as modified and supplemented above.

2. The Motion to Suppress Post-Arrest Statements (Doc. #66) is **granted in part and denied in part** as set forth in the Report and Recommendation and above.

---

[1] Defendant's testimony was that he understood his rights (Doc. #85, p. 64), he was not coerced or forced to make a statement (Id. at 65), but he refused to sign the waiver form and stated "I will not agree to waive my rights. I do not waive my rights." (Id. at 47). Defendant further testified that Special Agent Roncinski then upset him be saying defendant's girlfriend had just discovered she was pregnant, asked him some questions, and continued with the interview. (Id. at 48-49). The magistrate judge resolved credibility disputes in favor of Special Agent Roncinski, and the Court agrees. Additionally, the testimony of Special Agent John Kuchta confirmed that of Special Agent Roncinski and contradicted that of defendant (Id. at 85-92).

3. The Second Motion to Suppress Post-Arrest Statements (Doc. #72) is **denied.**

**DONE AND ORDERED** at Fort Myers, Florida, this 27th day of February, 2006.

*John E. Steele*
JOHN E. STEELE
United States District Judge

Copies:

Hon. Sheri Polster Chappell

United States Magistrate Judge


United States Attorney (Michelland)

Counsel of Record (Hollander)